# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| LILI GENG, M.D., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UT MEDICAL GROUP, INC. d/b/a ) <br> UNIVERSITY CLINICAL HEALTH, ) <br> ) <br> Defendant. | Case No. 2:20-cv-02818-JPM-cgc |

## SCHEDULING ORDER

This Cause was before the Court on January 14, 2021, for a Telephonic Scheduling Conference pursuant to Rule 16 of the Federal Rules of Civil Procedure and Local Rules 16.1 and 16.2 (differentiated case management). Counsel present for Plaintiff Lili Geng, M.D. ("Geng") was Kristy Bennett. Counsel present for Defendant UT Medical Group, Inc. d/b/a University Clinical Health ("UCH") was Whitney Dowdy. Prior to the Scheduling Conference, on December 23, 2020, the Parties met and conferred in compliance with Federal Rule of Civil Procedure 26(f). (See Rule 26(f) Report, ECF No. 14.)

This race, sex and national origin discrimination and retaliation case arises out of Defendant's October 5, 2018 termination of Plaintiff, who had been employed as a Staff Pathologist for UCH since at least December 12, 2016[1]. (Compl., ECF No. 1 ¶¶ 8, 70.) Plaintiff, a Chinese Asian female, alleges that she experienced a series of discriminatory and retaliatory incidents of harassment from April 11 through October 5, 2018, all involving her supervisor, Dr. Abdullah Azouz. (Id. ¶¶ 13–14, 16–70.) Plaintiff alleges that she was terminated after Dr. Azouz accused her of "an alleged patient safety issue relating to a cancer case," but that UCH never provided her with information relating to stated patient safety issue and that "the real reason for [Plaintiff's] termination is discrimination and retaliation." (Id. ¶¶ 67–71.)

Plaintiff asserts that "Defendant has violated [her] right to be free from discrimination, harassment, and a hostile work environment based on her race, sex, and national origin under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e" and "based on her race pursuant to 42 U.S.C. § 1981." (Id. ¶¶ 73–74.) Plaintiff also asserts that "Defendant has violated [her] right to be free from reprisal and retaliation for undertaking protected activity," again under both Title VII and 42 U.S.C. § 1981. (Id. ¶¶ 75–76.) Plaintiff filed her charges of race, sex and national

---

[1] Defendant alleges in its Answer that Plaintiff began working for UCH on or around November 1, 2016. (ECF No. 15 ¶ 8.)

1

origin discrimination and retaliation with the EEOC on June 11, 2019 and Plaintiff received her Notice of Suit Rights letter on August 18, 2020.  (Id. ¶¶ 6–7; see also ECF Nos. 1-2 & 1-3.)  Plaintiff seeks back pay, performance pay, front pay, compensatory damages, punitive damages, costs and attorney fees, reinstatement and expungement of inaccurate or derogatory records or information maintained by UCH.  (Compl., ECF No. 1 at PageID 9.)

Defendant filed its Answer on January 11, 2021.  (ECF No. 15.)  Defendant admits that "Plaintiff is an Asian woman of Chinese descent who worked for Defendant as a Pathologist." (Id. ¶ 8.)  Defendant admits that Plaintiff was terminated on October 5, 2018, but denies that Dr. Azouz was involved with the decision to place Plaintiff on administrative leave prior to her termination and also denies that Plaintiff and Dr. Azouz interacted while Defendant investigated her complaints against him.  (Id. ¶¶ 67–70.)  Defendant asserts several affirmative defenses, including that its actions were based on "legitimate, nondiscriminatory, nonretaliatory reasons" and that it "adopted reasonable anti-discrimination and anti-retaliation policies."  (Id. at PageID 50.)  Defendant also asserts that it cannot be held liable for any employee's potentially discriminatory or retaliatory decisions or actions against Plaintiff.  (Id. at PageID 51.)

The Parties do not dispute the following facts:

1) Plaintiff is a Chinese Asian female.  She is not married.  She has one son, who lives in Memphis, Tennessee.  Plaintiff currently resides in Milford, Michigan but she also has a residence in Memphis, Tennessee.
2) Plaintiff is a Board-Certified Pathologist.
3) Plaintiff signed a three-year employment contract with Defendant on December 12, 2016, providing for an annual salary of $220,000.  That salary included $210,000 for her professional services at UCH and $10,000 for her faculty position at the University of Tennessee Health Science Center.  The contract also provided for a maximum bonus of $14,750 each quarter.
4) Plaintiff's employment with UCH was terminated on October 5, 2018, but Plaintiff retained her faculty position through June of 2019.
5) Plaintiff's direct supervisor at UCH was Dr. Abdullah Azouz, the Pathology Division Chief of UCH.  Dr. Azouz is still employed in the same position by Defendant.
6) At the time that Plaintiff was employed by UCH, Dr. Mahul B. Amin was the Laboratory Research and Management Chair and the Chair of the Department of Pathology.  Dr. Amin is no longer employed by Defendant.
7) The Director of Operations at UCH during the time of Plaintiff's employment was Tim Hodge.  Hodge is still employed in the same position by Defendant.

At the Conference, it was established that the key witnesses in this case will include: Dr. Geng, Dr. Azouz, Dr. Amin, Mr. Hodge, Dr. Torgbe, Dr. Lopez, Dr. Geng's son, Dr. Geng's pastor, every employee that worked in the pathology department while Plaintiff was employed, including administrative staff, and anyone who was involved in the quality assurance review of the two diagnoses Defendant alleges led to Plaintiff's termination.[2]

---

[2] At the Conference, it was established that the core issue in this case involves the details surrounding two misdiagnoses that Defendant alleges were the reason for Plaintiff's termination.  Defendant will produce to Plaintiff

At the Telephonic Scheduling Conference, the following dates were established as the final deadlines for:

**INITIAL DISCLOSURES PURSUANT TO FED. R. CIV. P. 26(a)(1)**: **February 12, 2021**

**MOTIONS TO JOIN PARTIES** (not anticipated): **March 15, 2021**

**MOTIONS TO AMEND PLEADINGS** (not anticipated): **March 15, 2021**

**MOTIONS TO DISMISS** (not anticipated): **April 14, 2021**

**ALTERNATIVE DISPUTE RESOLUTION** (not required)

**COMPLETING ALL DISCOVERY**: **September 8, 2021**

(a) **WRITTEN DISCOVERY**: **August 9, 2021**
(b) **DEPOSITIONS**: **September 8, 2021**

**EXPERT WITNESS DISCLOSURES PURSUANT TO FED. R. CIV. P. 26(a)(2)**:

(a) **DISCLOSURE OF PLAINTIFF'S (OR PARTY WITH BURDEN OF PROOF) RULE 26(a)(2) EXPERT INFORMATION** (not anticipating a retained expert): **July 9, 2021**

(b) **DISCLOSURE OF DEFENDANT'S (OR OPPOSING PARTY) RULE 26(a)(2) EXPERT INFORMATION** (not anticipating a retained expert): **August 9, 2021**

(c) **EXPERT WITNESS DEPOSITIONS**: **September 8, 2021**

**MOTIONS TO EXCLUDE EXPERTS UNDER F.R.E. 702/DAUBERT MOTIONS**: **September 23, 2021**

**SUPPLEMENTATION UNDER RULE 26(e)(2)**: **September 8, 2021**

**FILING DISPOSITIVE MOTIONS**: **October 8, 2021**

**TRIAL**:

1. The **jury trial** in this matter, which is anticipated to last **4** days, is set to begin on **January 10, 2022 at 9:30 a.m.** in a courtroom to be designated by the District Court courtroom sharing plan.

2. A **pretrial conference** is set for **December 20, 2021 at 9:30 a.m**.

---

information regarding those two misdiagnoses, including the pathology reports, the permanent or frozen sections and all materials relating to the review of Plaintiff's initial diagnoses.

3. The **joint proposed pretrial order, proposed verdict form, proposed jury instructions, proposed voir dire questions, and motions in limine** are due by no later than **4:30 p.m. on December 13, 2021**.

**OTHER RELEVANT MATTERS**:

As required by Local Rule 26.1(e), the parties have conferred as to whether they will seek discovery of electronically stored information ("e-discovery") and will submit a joint agreement regarding e-discovery for the Court's approval by March 1, 2021.

No depositions may be scheduled to occur after the discovery deadline. All discovery requests or other discovery-related filings that require a response must be filed sufficiently in advance of the discovery deadline to enable the opposing party to respond by the time permitted by the Rules prior to that date.

Motions to compel discovery are to be filed and served within 45 days of the default or service of the response, answer, or objection that is the subject of the motion. However, if such default or service occurs within 30 days before the discovery deadline, the motion to compel must be filed within 30 days after such default or service

The parties may engage in ADR at their discretion by the ADR deadline. If any party determines that mediation is unlikely to be successful, would not be cost effective, or is a procedure in which they do not wish to engage, they may file a Notice of Intent not to engage in mediation. Upon such notice, the mediation shall be cancelled. Pursuant to Local Rule 16.2(d), if the parties choose to engage in mediation, within 7 days of completion of ADR, the parties shall file a notice confirming that the ADR was conducted and indicating whether it was successful or unsuccessful, without disclosing the parties' respective positions at the ADR.

Pursuant to Local Rule 7.2(a)(1)(A), all motions, except motions pursuant to Fed. R. Civ. P. 12, 56, 59, and 60, shall be accompanied by a proposed order in a word processing format sent to the ECF mailbox of the presiding judge.

Pursuant to Local Rule 7.2(a)(1)(B), the parties are required to consult prior to filing any motion (except motions filed pursuant to Fed. R. Civ. P. 12, 56, 59, and 60).

The opposing party must file a response to any opposed motion. Pursuant to Local Rule 7.2(a)(2), a party's failure to respond timely to any motion, other than one requesting dismissal of a claim or action, may be deemed good grounds for granting the motion.

Neither party may file an additional reply to any motion, other than a motion filed pursuant to Fed. R. Civ. P. 12(b) or 56. As provided by Local Rule 7.2(c), if a party believes that a reply is necessary, it shall file a motion for leave to file a reply accompanied by a memorandum setting forth the reasons for which a reply is required within seven days of service of the response. Pursuant to Local Rules 12.1(c) and 56.1(c), a party moving for summary judgment or to dismiss may file a reply within 14 days after being served with the response in opposition to the motion.

The parties do not consent to trial before the Magistrate Judge.

This order has been entered after consultation with the parties.  Absent good cause shown, the deadlines set by this order will not be modified or extended.

**SO ORDERED**, this 14th day of January, 2021.

                                                    /s/ Jon P. McCalla
                                                   JON P. McCALLA
                                                   UNITED STATES DISTRICT JUDGE